IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WES LEE BROWN**, <br><br> Plaintiff, <br><br> v. <br><br> **BERKS COUNTY JAIL, et al.**, <br><br> Defendants. | **CIVIL ACTION** <br><br> **NO. 23-0780-KSM** |

## MEMORANDUM

**MARSTON, J.**  May 9, 2023

Plaintiff Wes Lee Brown, proceeding *pro se*, brings this civil rights action pursuant to 42 U.S.C. § 1983 with respect the conditions of his confinement while incarcerated at Berks County Jail.  Currently before the Court are Brown's Complaint (Doc. No. 2) and his Motion for Leave to Proceed *In Forma Pauperis* (Doc. No. 1).[1]  For the following reasons, the Court grants Brown leave to proceed *in forma pauperis* and dismisses the Complaint in part for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

---

[1] Brown asserts he has not been able to obtain a certified copy of his prisoner account statement for the time period from August 21, 2022 through February 21, 2023.  In his Motion for Leave to Proceed *In Forma Pauperis*, Brown explained his efforts to secure his prisoner account statement and the difficulties he encountered in doing so.  (Doc. No. 2 at 4–5.)  The Court finds that Brown has substantially complied with the directives of 28 U.S.C. § 1915(a)(2) and will permit him to proceed *in forma pauperis* since he has submitted an Inmate Communication Form in which an official from Berks County Jail represented that Brown's account balance was zero.  (*Id.* at 4.)

I.      **FACTUAL ALLEGATIONS**[2]

Brown, who is currently incarcerated at SCI Mahanoy, brings this action against the following Defendants: (1) Berks County Jail; (2) Berks County; (3) Jeffrey Smith, the Warden of Berks County Jail; (4) Stephanie Smith, the Deputy Warden of Berks County Jail; and (5) Jessica Collins, the Director of Treatment at Berks County Jail.[3]  (Doc. No. 2 at 2–3.)  Brown alleges that he was incarcerated at Berks County Jail between May 23, 2022 and February 16, 2023.  (*Id.* at 7.)  At various points during his incarceration, Brown asserts that the individual Defendants violated his constitutional rights with respect to the following five issues: (1) "black mold" in the showers in D-block, the disciplinary unit; (2) dirty standing water on the floor of his cell on D-block resulting from a leaky sink and toilet; (3) a "dirty" ventilation system/lack of cleaning of the ventilation systems throughout the prison; (4) denial of access to the courts; and (5) retaliation.[4]  (*Id.* at 3–6, 8.)  Brown seeks $250,000 in damages for "deprivation, anguish, [and] stress[.]"  (*Id.* at 6.)

---

[2]  The facts set forth in this Memorandum are taken from Brown's Complaint.  The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system.

[3] Brown checked the boxes on the form he used to file his Complaint indicating that he seeks to name Defendants Jeffrey Smith, Stephanie Smith, and Jessica Collins solely in their official capacities.  Since Brown appears to not have understood the implication of naming these Defendants in their official capacities only, and because the Compliant seeks money damages for Defendants' alleged actions, the Court will liberally construe the Complaint to assert claims against these Defendants in their individual capacities as well.  *See Downey v. Pa. Dep't of Corr.*, 968 F.3d 299, 310 (3d Cir. 2020) ("To determine whether a plaintiff sued state officials in their official capacity, we first look to the complaints and the course of proceedings." (quotations omitted)); *Coward v. City of Phila.*, No. 21-1619, 2021 WL 4169422, at *3 (E.D. Pa. Sept. 13, 2021) (permitting claim against defendant in his individual capacity to proceed even though "[plaintiff] did not check the box indicating a desire to sue [that defendant] in his individual capacity" where the allegations clearly sought relief based on the defendant's conduct).

[4] The detailed and specific allegations regarding each of the issues Brown encountered at Berks County Jail are set forth *infra* in Section III.

## II.     STANDARD OF REVIEW

The Court will grant Brown leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[5] Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "At this early stage of the litigation,' '[the Court will] accept the facts alleged in [the *pro se*] complaint as true,' 'draw[] all reasonable inferences in [the plaintiff's] favor,' and 'ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim.'" *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (quoting *Perez v. Fenoglio*, 792 F.3d 768, 774, 782 (7th Cir. 2015)). Conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 678. As Brown is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244–45 (3d Cir. 2013)).

## III.    DISCUSSION

Brown asserts claims for violations of his civil rights pursuant to 42 U.S.C. § 1983, the vehicle by which constitutional claims may be brought in federal court. (*See* Doc. No. 2 at 3.) "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

---

[5] But because Brown is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act ("PLRA"). *See* 28 U.S.C. § 1915(b).

committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "A defendant in a civil rights action must have personal involvement in the alleged wrongs" to be liable. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)); *see also Iqbal*, 556 U.S. at 676 (explaining that "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Liability under § 1983 cannot be predicated on a *respondeat superior* basis. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.* Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from

4

defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'" (quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005)).

### A. Claims Against Berks County Jail

Brown names Berks County Jail in the caption of his Complaint. To the extent Brown intended to bring claims against Berks County Jail these claims must be dismissed. Berks County Jail is not considered a "person" for purposes of § 1983. *See Edwards v. Northampton Cnty.*, 663 F. App'x 132, 136 (3d Cir. 2016) (explaining that the district court "appropriately disposed of" prisoner's conditions of confinement claims against Northampton County Prison on the basis that a prison is not a "person" subject to suit under § 1983) (citing *Fischer v. Cahill*, 474 F.2d 991, 992 (3d Cir. 1973)); *see also Lenhart v. Pennsylvania*, 528 F. App'x 111, 114 (3d Cir. 2013) ("Westmoreland County Prison is not a person capable of being sued within the meaning of § 1983."); *see also White v. Knight*, 710 F. App'x 260, 262 (7th Cir. 2018). Accordingly, any claim alleged against Berks County Jail itself will be dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). Because any attempt to amend claims against Berks County Jail would be futile, these claims will be dismissed with prejudice. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (stating that leave to amend claims dismissed on screening should generally be granted "unless amendment would be inequitable or futile").

### B. Official Capacity Claims

Brown has sued all Defendants in their official capacities. He has also sued their employer Berks County. (Doc. No. 2 at 2–3.) With respect to Defendants Jeffrey Smith, Stephanie Smith, and Jessica Collins ("BCJ Defendants"), Brown's official capacity claims are

indistinguishable from claims against Berks County. *See Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" (quoting *Monell v. N.Y.C. Dept. of Soc. Servs.*, 436 U.S. 658, 690, n.55 (1978))). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Since Brown's official capacity claims against the BCJ Defendants are essentially claims brought against their municipal employer, the official capacity claims are dismissed as duplicative of the claim against Berks County. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.").

Having dismissed the claims asserted against BCJ Defendants in their official capacity, the Court now considers whether Brown has stated a *Monell* claim against Berks County. To plead a plausible *Monell* claim against Berks County under § 1983, Brown must allege that a Berks County policy or custom caused the violation of his constitutional rights. *See Monell*, 436 U.S. 658, 694 (1978). "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given

course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).  For a custom to be the proximate cause of an injury, the defendant must have "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to his injury."  *Id.* (internal quotations and alterations omitted).

Brown has failed to identify a specific policy or custom of Berks County that caused a violation of his constitutional rights during his incarceration at Berks County Jail.  While Brown asserts that Berks County and the BCJ Defendants (the prison officials it employs) "used the authority of their office to either ignore negative conditions [at Berks County Jail] or to perpet[u]ate them[,]" this allegation is conclusory and insufficient to state a plausible claim for liability based on a municipal policy or custom.  *See Iqbal*, 556 U.S. at 678.  Accordingly, Brown's municipal liability claims against Berks County will be dismissed without prejudice for failure to state a claim pursuant to § 1915(e)(2)(B)(ii).  The United States Court of Appeals for the Third Circuit has held that district courts should dismiss complaints under the PLRA with leave to amend "unless amendment would be inequitable or futile."  *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002); *see also Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000).  Accordingly, Brown will be granted to leave to amend his claims against Berks County if he can allege sufficient facts to state a plausible basis for liability under *Monell*.

    **C.**    **Claims Against the BCJ Defendants**

Next, Brown contends that the BCJ Defendants, in their individual capacities, violated his constitutional rights: (1) to clean and sanitary housing conditions; (2) to be free of retaliation

from prison employees; and (3) to access the courts.  The Court addresses Brown's claims in turn.

### 1. Unsanitary Housing Conditions

Brown alleges that from approximately October 22, 2022 through November 4, 2022, he was housed in D-block, which is the disciplinary unit at Berks County Jail. (Doc. No. at 4–5.) During his time on D-block, Brown contends that there was "black mold" in the showers and that there was dirty standing water on the floor of his cell resulting from a leaky sink and toilet. (*Id.* at 5–6.)  Brown asserts that he was "forced to eat and live 24 hours a day in a cell with dirty standing water, and shower in a stall with black mold" which caused him severe headaches and nausea. (*Id.* at 6.)  He alleges that his headaches and lack of appetite continued for over a week after he left D-unit. (*Id.*)  Additionally, Brown claims that the "dirty ventilation" system was a "problem" during his entire incarceration at Berks County Jail because he and other inmates would "notice dust and dirt blowing out [of] the air vents" in their cells several times a week. (*Id.* at 5–6.)  Brown asserts that despite complaints from inmates, the ventilation system was never cleaned, nor were the air filters ever changed. (*Id.* at 6.)  Brown claims that he is entitled to damages based on the "disregard the maintenance and administrative staff showed toward" these conditions. (*Id.*)

Though "[t]he Constitution 'does not mandate comfortable prisons,'" the conditions to which inmates are exposed must be humane. *Cook v. Corbett*, No. 14-5895, 2015 WL 4111692, at *7 (E.D. Pa. July 8, 2015) (citing *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 349 (1981)).  The Due Process Clause of the Fourteenth Amendment governs claims challenging conditions of confinement raised by pretrial detainees.[6]

---

[6] A review of public records shows that Brown was a pretrial detainee at the time of the relevant events alleged in the Complaint. (*See* Doc. No. 2 at 4–6) (challenging conditions of confinement through

*Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). To establish a basis for a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *Bell v. Wolfish*, 441 U.S. 520, 538 (1979). Unconstitutional punishment typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *Bell v. Wolfish*, 441 U.S. 520, 538-39, 539 n.20 (1979)). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298–99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'" (quoting *Farmer*, 511 U.S. at 837)); *cf. Edwards*, 663 F. App'x at 135 ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)).

Although the conditions described by Brown may not have been pleasant or desirable, he has not stated a plausible claim regarding the conditions of his confinement against Defendants Jeffrey Smith, Stephanie Smith, or Collins. Brown does not tie any of his allegations regarding the black mold, standing water in his cell, or the ventilation system to specific conduct by any the named Defendant. Brown also fails to allege that these specific Defendants had actual

---

December 21, 2022); *see also Commonwealth v. Brown*, CP-06-CR-0002299-2022 (C.P. Berks) (reflecting that Brown entered a *nolo contendere* agreement on December 21, 2022 and was sentenced on that date).

knowledge or were otherwise aware of these conditions and acquiesced in their existence/continuation. *See Wilson*, 423 F. App'x at 173 (requiring prison officials to be aware of facts regarding the conditions of confinement); *see also Rode*, 845 F.2d at 1207; *Dooley*, 957 F.3d at 374 ("Personal involvement requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" (quoting *Rode*, 845 F.2d at 1207)). He cannot, therefore, plausibly assert liability against them based on their supervisory roles at Berks County Jail. Accordingly, the Complaint fails to state a plausible claim against Defendants Jeffrey Smith, Stephanie Smith, and Collins based on these conditions of confinement, and these will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Brown will be granted leave to file an amended complaint if he can allege sufficient facts to cure this pleading deficiency.

### 2. Denial of Access to the Courts

Brown alleges that from July 1, 2022 through December 21, 2022, Defendant Stephanie Smith, Defendant Jessica Collins, and Law Librarian Hanna Long[7] "continuously denied" Brown "access to the law library to do legal work and research." (Doc. No. 2 at 5.) Brown asserts that they also repeatedly denied him the ability to make legal copies unless he supplied his own paper, which he could not buy. (*Id.*) Finally, he contends that these Defendants "refused to mail [his] legal work to the local courthouse" and told Brown he "had to try and use the couple envelopes the jail gives out each month" or to try to get additional envelopes from other inmates. (*Id.*) It appears that Brown's allegations regarding his lack of access are tied to his assertion that he was "indigent"—a fact Brown claims these Defendants were aware of and disregarded. (*Id.*)

---

[7] Liberally construed, Brown's Complaint can fairly be said to name Long as a Defendant with respect to his claims of denial of access to the Courts. Accordingly, the Court will direct the Clerk to add Long to the docket as a Defendant in this matter. Defendant Jeffrey Smith does not appear to be part of this claim.

The Court understands Brown's allegations regarding his lack of access to the law library, inability to make copies, and inability to mail documents to the local courthouse as his attempt to raise a claim for denial of access to the courts. "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts." *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008); *see also Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (recognizing that a claim asserting restrictions on access to the prison law library is considered as an "access-to-the-courts" claim under the First Amendment). "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury'—that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Monroe*, 536 F.3d at 205 (quoting *Christopher v. Harbury*, 536 U.S. 403, 415 (2002)); *see also Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (*per curiam*) (quoting *Lewis v. Casey*, 518 U.S. 343, 350 (1996)) ("A prisoner making an access-to-the-courts claim is required to show that the denial of access caused actual injury."). This is because the right of access to the courts "rest[s] on the recognition that the right is ancillary to the underlying claim, without which a plaintiff cannot have suffered injury by being shut out of court." *Christopher*, 536 U.S. at 415. In other words, a prisoner claiming that he was denied access to the courts must allege an injury traceable to the conditions of which he complains. *Diaz v. Holder*, 532 F. App'x 61, 63 (3d Cir. 2013) (*per curiam*) (affirming dismissal of denial of access claims where plaintiff failed to tie alleged deficiencies in library to harm in underlying action). In general, an actual injury occurs when a prisoner demonstrates that a "nonfrivolous" and "arguable" claim was lost because of the denial

of access to the courts. *Christopher*, 536 U.S. at 415. "[T]he underlying cause of action, . . . is an element that must be described in the complaint." *Id.*

Brown has not stated a plausible claim for denial of access to the courts. He does not identify a non-frivolous or arguable claim that was lost in an underlying action that he was unable to pursue because he was denied access to the law library, lacked paper for making legal copies, or was unable to obtain additional mailing envelopes. Accordingly, Brown's claim that he was denied access to the courts is not plausible and will be dismissed pursuant to § 1915(e)(2)(B)(ii). The dismissal of Brown's claims is without prejudice, and he will be granted leave to file an amended complaint if he is able to set forth sufficient facts to cure the defects the Court has identified.

### 3. Retaliation

Brown alleges that on October 21, 2022, Defendant Collins, the Director of the Treatment Department, issued a "write-up"[8] against Brown claiming that he was "interfering with staff[.]" (Doc. No. 2 at 4.) Brown contends that Defendant Collins issued this "Class 1 misconduct" in retaliation for him filing a grievance against "Treatment staff" for failing to put him on the inmate employment list that Brown had been otherwise eligible to be on for several months. (*Id.* at 4, 8.) Brown claims that he was "sent to the 'hole'"[9] for 15 days because of the misconduct write-up issued by Defendant Collins. (*Id.* at 8.) Brown further asserts that although he had filed grievances on prior occasions, he "stopped putting in paperwork" for grievances after Defendant Collins issued the misconduct write-up.. (*Id.*)

---

[8] Brown also refers to this October 21, 2022 "write-up" as an "unfounded misconduct[.]" (Doc. No. 2 at 6.)

[9] "The term 'the hole' is often used to refer to solitary confinement." *Hernandez v. City of Phila.*, No. CV 22-0027-KSM, 2022 WL 10493526, at *1 (E.D. Pa. Oct. 18, 2022).

In order to state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003); *see also Coit v. Garman*, No. 19-2580, 2020 WL 2125780, at *3 (3d Cir. May 5, 2020). The timing of the allegedly retaliatory behavior relative to the constitutionally protected conduct may establish a causal link between the two for purposes of establishing motivation. *See Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016). A prisoner's filing of a grievance constitutes constitutionally protected conduct. *See id.*

Brown has stated a plausible claim that Defendant Collins violated his First Amendment rights when she allegedly retaliated against him by filing a misconduct that resulted in Brown going to the hole for 15 days because he filed a grievance. Brown has sufficiently alleged that he was engaged in constitutionally protected conduct when he filed a grievance to complain about the Treatment Department's failure to put him on the inmate employment list. Brown's allegations that Defendant Collins essentially falsified a misconduct report against him due to this protected activity are sufficiently specific to allege a plausible retaliation claim against her at this stage of the litigation. *See Mitchell*, 318 F.3d at 530–31 ("Mitchell's allegation that he was falsely charged with misconduct in retaliation for filing complaints against Officer Wilson implicates conduct protected by the First Amendment."); *cf. Smith v. Mensinger*, 293 F.3d 641, 653 (3d Cir. 2002) ("We have ... held that falsifying misconduct reports in retaliation for an inmate's resort to legal process is a violation of the First Amendment's guarantee of free access

13

to the courts."). Accordingly, the Court is prepared to direct service of Brown's retaliation claims against Defendant Collins.

### IV.     CONCLUSION

For the foregoing reasons, the Court will grant Brown leave to proceed *in forma pauperis*. Brown's § 1983 claims against Berks County Jail and his duplicative official capacity claims will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). The following claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim: (1) Brown's municipal liability claim against Berks County under *Monell*; (2) his conditions of confinement claim; and (3) his denial of access to the courts claim. As amendment does not appear futile, the dismissal of these claims will be without prejudice to Brown filing an amended complaint if he is able to set forth sufficient facts to cure the defects the Court has identified. The Court is prepared to serve Brown's First Amendment retaliation claim against Defendant Jessica Collins, only. Brown will be granted the option of filing an amended complaint in an attempt to cure the defects in the claims dismissed without prejudice or advising the Court that he seeks to proceed only on the First Amendment retaliation claim against Defendant Jessica Collins. An appropriate Order follows.