IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **WES LEE BROWN**, <br><br> Plaintiff, <br><br> v. <br><br> **DEPUTY WARDEN STEPHANIE SMITH, et al.,** <br><br> Defendants. | **CIVIL ACTION** <br><br><br> **NO. 23-780-KSM** |

## MEMORANDUM

**MARSTON, J.**                                                                                          September 5, 2024

*Pro Se* Plaintiff Wes Lee Brown brings this civil rights action pursuant to 42 U.S.C. § 1983, asserting claims against multiple officials at Berks County Jail.  The Court previously screened Brown's currently operative Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and found that Brown had stated a claim against Defendant Deputy Warden Stephanie Smith for unconstitutional punishment under the Fourteenth Amendment and against Defendant Jessica Collins for First Amendment retaliation.  Presently before the Court is Defendants' Motion to Dismiss Brown's Amended Complaint.  (Doc. No. 23.)  For the following reasons, the Court will deny Defendants' motion in its entirety.

I.   **BACKGROUND**

   A.   **Brown's Initial Complaint**

On February 21, 2023, Brown initiated this lawsuit by filing a complaint asserting claims under 42 U.S.C. § 1983 against the following Defendants: (1) Berks County Jail; (2) Berks County; (3) Jeffrey Smith, the Warden of Berks County Jail; (4) Stephanie Smith, the Deputy

Warden of Berks County Jail; (5) Jessica Collins, the Director of Treatment at Berks County Jail; and (6) Hanna Long, the Law Librarian at Berks County Jail.  (Doc. No. 2 at 2–3, 5.)[1]  Brown alleged that he was exposed to black mold in the jail's showers, to dirty standing water on the floor of his cell while housed in the disciplinary unit, and to a dirty ventilation system.  (*Id*. at 3–6, 8.)  He also alleged that he was denied access to the law library, and that he was retaliated against for filing a grievance.  (*Id*.)

In a May 9, 2023 Memorandum and Order, the Court granted Brown leave to proceed *in forma pauperis* and dismissed his Complaint in part following screening pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  (*See* Doc. Nos 6, 7.)  In particular, the Court dismissed Brown's claims against the Berks County Jail, his official capacity claims against the individually-named Berks County Jail employees, and all claims against Berks County because jails are not subject to liability under § 1983 and because Brown failed to allege a basis for municipal liability.  (Doc. No. 6 at 5–7.)  The Court also dismissed Brown's claims based on unsanitary housing conditions at the Berks County Jail because he did "not tie any of his allegations regarding the black mold, standing water in his cell, or ventilation system to specific conduct by any named Defendant."  (*Id.* at 9.)  Finally, the Court dismissed Brown's First Amendment access to courts claim because he failed to allege that he suffered an actual injury.  (*Id.* at 10–12.)  However, the Court found that Brown had stated a plausible claim against Defendant Collins for First Amendment retaliation, premised on his allegation that she issued a fraudulent misconduct report against him after he filed a grievance.  (*Id.* at 12–14.)  The Court permitted Brown leave to file an amended complaint to the extent he could cure the defects identified by the Court.

---

[1] The Court adopts the pagination supplied to the Complaint by the CM/ECF docketing system.

**B.      Brown's Amended Complaint**

On June 26, 2023, Brown filed the currently operative Amended Complaint and a motion to appoint counsel.  (Doc. Nos. 8, 9.)  In his Amended Complaint, Brown again brings § 1983 claims against Defendants Jeffrey Smith, Stephanie Smith, Jessica Collins, and Hanna Long for First Amendment retaliation, denial of access to courts, and unconstitutional punishment in violation of the Fourteenth Amendment related to the unsanitary conditions at Berks County Jail, namely the presence of black mold, dirty standing water, and a dirty ventilation system.  (Doc. No. 9 at 2–3.)  As to the retaliation claim, Brown alleges that he filed a grievance after the jail's Treatment Department refused to place him on a list of approved workers at the jail.  (*Id.* at 14, 18.)  After filing the grievance, Brown was given a "Class I Misconduct" by Collins for "interfering with staff."  (*Id.*)  As a punishment for the misconduct write-up, Brown was sent to the "hole" for 15 days and then to the maximum-security block for 30 days.  (*Id.* at 18.)

And with regard to the dirty ventilation system, Brown alleges that he noticed dirt and dust particles blowing out of the vents into his cell.  (*Id.* at 13, 16.)  Brown alleges that this dirty ventilation system caused him to suffer headaches and breathing difficulties.  (*Id*. at 20.)  He was allegedly told by prison staff members that the vent filters are never cleaned or changed.  (*Id*. at 13.)  Brown complained to Defendant Stephanie Smith and to maintenance personnel about the ventilation system but they "brushed it off and ignored the issue."  (*Id*. at 17, 20.)  Brown seeks money damages as a remedy.  (*Id.* at 22–24.)

Brown alleges that he filed grievances regarding the prison's "conditions, denial of constitutional rights, false statements by staff, and malicious and vindictive actions by staff, and oppression by staff, retaliation."  (*Id.* at 7.)  He alleges that these grievances were denied, as were his appeals to the superintendent.  (*Id.*)

On August 14, 2024 the Court issued a Memorandum and Order screening Brown's Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). (Doc. Nos. 11, 12.) The Court dismissed Brown's claim for denial of access to courts, finding that he had again not alleged an actual injury. (Doc. No. 11 at 8.) The Court also dismissed Brown's claims related to the black mold and dirty standing water because he "failed to allege that any individually-named Defendant had actual knowledge or was otherwise aware of the alleged unsanitary conditions." (*Id.* at 6–7.) However, the Court found that Brown stated a plausible cause of action related to the dirty ventilation system against Defendant Deputy Warden Stephanie Smith because Brown alleged that Smith ignored his complaints about this issue. (*Id.* at 7.) The Court also held that Brown had again stated a claim for First Amendment retaliation against Defendant Collins, finding that Brown had alleged that he engaged in constitutionally protected conduct by filing a grievance and that Collins retaliated against him by issuing a misconduct report. (*Id.* at 9.)

Having found that Brown had stated two viable causes of action, the Court directed the Clerk of Court to serve written waiver requests on Defendants Smith and Collins. (Doc. No. 12.) On October 12, 2023, Defendants entered their appearance (Doc. No. 22) and filed the instant motion to dismiss (Doc. No. 23). On October 30, 2023, Brown filed a *pro se* response to Defendants' motion to dismiss.[2] (Doc. No. 28.)

---

[2] Shortly after screening the Amended Complaint, the Court entered an Order granting Brown's motion to appoint counsel and directed the Clerk of Court to refer this matter to the Court's Prisoner Civil Rights Panel seeking an attorney to voluntarily represent Brown. (Doc. No. 16.) Around the time that Defendants filed their motion to dismiss, Brown submitted a letter seeking more information as to who would be representing him in this matter. (Doc. No. 21.) The Court held a status conference with the parties via Zoom on October 23, 2023 to provide more information to Brown on the workings of the Prisoner Civil Rights Panel and to remind him that referral to the panel did not guarantee representation. (Doc. Nos. 25, 26.) During this status conference, Brown informed the Court that rather than proceeding with the case *pro se*, he preferred to wait a few months to see if an attorney would agree to represent him. The Court thus entered an Order staying this case until February 1, 2024 or until an attorney entered their appearance on Brown's behalf. (Doc. No. 27.) The Court also ordered that Brown respond to the pending motion to dismiss no later than February 29, 2024. (*Id.*) Notwithstanding that the Court had stayed the matter on his request, on October 30, 2023, Brown filed his *pro se* opposition to Defendants'

4

## II.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the Plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement.'" *Id.* Factual allegations must be "enough to raise a right to relief above the speculative level," and a "complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007) (quotation marks omitted).

That said, "[t]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678; *see also Bell Atl. Corp.*, 550 U.S. at 555 (explaining that the Plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action"). It is the Defendants' burden to show that a complaint fails to state a claim. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

---

motion to dismiss. (Doc. No. 28.) On February 6, 2024 the Court lifted the stay because no attorney had entered their appearance on Brown's behalf. (Doc. No. 32.) However, the Court subsequently received notice from Brown that he wished to remain on the panel. (Doc. Nos. 33, 34.) The Court thus entered another order staying this matter until either Brown received representation or July 30, 2024. (Doc. No. 35.) However, on July 15, 2024, after having received a letter from Brown indicating that he wished to proceed without counsel (Doc. No. 36), the Court lifted the stay and permitted Brown to file a supplement to his *pro se* opposition to the motion to dismiss. (Doc. No. 37.) Brown never filed such a supplement.

Because Brown is proceeding *pro se*, the Court liberally construes his allegations. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 703 F.3d 239, 244–45 (3d Cir. 2013)). "This means we remain flexible, especially 'when dealing with imprisoned pro se litigants.'" *Id.* (quoting *Mala*, 704 F.3d at 244). The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.* (quoting *Mala*, 704 F.3d at 245). However, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Id.* (quoting *Mala*, 704 F.3d at 245).

## III. DISCUSSION

Following the Court's screening of Brown's Amended Complaint, the only claims remaining are a claim for unconstitutional punishment under the Fourteenth Amendment Due Process Clause against Defendant Smith in relation to the dirty ventilation system at Berks County Jail and a claim for First Amendment retaliation against Defendant Collins related to her issuing a misconduct report against Brown after he filed a grievance. In their motion to dismiss, Defendants argue that Brown's Amended Complaint must be dismissed with prejudice in its entirety because: (1) he has failed to exhaust his administrative remedies as is required under the Prisoner Litigation Reform Act ("PLRA"); and (2) he has failed to state a claim for unconstitutional punishment or retaliation. (Doc. No. 23-1.) We will address each argument in turn below.

### A. Exhaustion

The Court turns first to Defendants' argument that Brown failed to exhaust his administrative remedies under the PLRA. The PLRA mandates that before prisoners can file lawsuits related to "prison conditions," they must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Otherwise, the claim is "premature and cannot be entertained"

in federal court. *El v. Matson*, No. 2:21-CV-01325, 2023 WL 4134723, at *7 (W.D. Pa. June 22, 2023). This exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The requirement to exhaust is mandatory; the Court may not "excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Prisoners are required to exhaust even if they seek remedies "not available in grievance proceedings," such as monetary damages. *Nussle*, 534 U.S. at 524.

The PLRA also requires prisoners to exhaust "properly." *Jones v. Bock*, 549 U.S. 199, 218 (2007). "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'—rules that are defined not by [§ 1997e(a)], but by the prison grievance process itself." *Id.* (citation omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)); *see also Shade v. Pa. Dep't of Corr.*, No. 3:16-CV-1635, 2020 WL 1891856, at *3 (M.D. Pa. Apr. 16, 2020) ("To exhaust administrative remedies an inmate must comply with all applicable grievance procedures and rules." (citing *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004))). The Third Circuit has read this requirement to act as a procedural default rule. *See Spruill*, 372 F.3d at 230 ("We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component."). In other words, failure to substantially comply with the procedural requirements of the administrative process set forth by the prison "bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." *Shade*, 2020 WL 1891856, at *3 (citing *Spruill*, 372 F.3d at 227–32; *Camp v. Brennan*, 219 F.3d 279 (3d Cir. 2000)).

7

The "failure to exhaust available administrative remedies is an affirmative defense." *Hill v. Harry*, No. 1:21-CV-01424, 2023 WL 6522400, at *10 (M.D. Pa. Oct. 5, 2023) (citing *Jones*, 549 U.S. at 216). Thus, the burden to plead and prove a failure to exhaust "rests on the defendant." *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018).

Here, Defendants argue that Brown's claims must be dismissed because he has not adequately pled that he exhausted his administrative remedies in accordance with the grievance system maintained by the Berks County Jail System. (*See* Doc. No. 23-1 at 13 (describing the grievance system available in the Berks County Jail System).) But the Supreme Court has made clear that "failure to exhaust is an affirmative defense under the PLRA" and that "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Bock*, 549 U.S. at 216. Although the Court may dismiss a claim at this stage in the limited circumstances where the failure to exhaust is apparent on the face of the complaint, *Ray v. Kertes*, 285 F.3d 287, 293 n.5 (3d Cir. 2002), here that is plainly not the case. To the contrary, Plaintiff made clear that he filed grievances regarding the "conditions" at the jail (presumably including the dirty ventilation system) and regarding the "retaliation" that he faced. (Doc. No. 9 at 7.) Thus, although he was not obligated to plead that he exhausted his administrative remedies, under a liberal construction of the Amended Complaint, Brown did so regardless.[3] Defendants' argument that the Amended Complaint must be dismissed because Brown has not adequately pled that he exhausted his administrative remedies is thus meritless. *Cf. Ruiz v. N.J. Dep't of Corr.*, No. 15-3304 (RBK) (JS), 2016 WL 3450813, at *2 (D.N.J. June 21, 2016) (refusing to dismiss on failure to exhaust

---

[3] Defendants appear to acknowledge Brown's general allegations that he filed and appealed grievances regarding the "conditions" of his confinement and "retaliation." They argue that these allegations are insufficient, however, because Brown does not specifically allege that he filed a grievance regarding the ventilation system or the particular instance of retaliation with Defendant Collins. Such a strict reading of the Amended Complaint is contrary to the Court's obligation to liberally construe Brown's allegations due to his *pro se* and incarcerated status. *See Vogt*, 8 F.4th at 185.

8

grounds where it was "not apparent from the face of the complaint whether or not plaintiff has exhausted his administrative remedies").

### B. Dirty Ventilation System Claim

The Court turns next to Defendants' argument that Brown has failed to state a claim for unconstitutional punishment premised on the dirty ventilation system. As an initial matter, when screening the Amended Complaint and applying the same standard applicable to the instant motion, the Court determined that Brown adequately pled such a claim. *See Muchler v. Greenwald*, 624 F. App'x 794, 797 (3d Cir. 2015) (providing that determining whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)). Nevertheless, because Defendants raise arguments not explicitly addressed by the Court's prior Memorandum, the Court will evaluate this claim again.

Since Brown was a pretrial detainee while at Berks County Jail (Doc. No. 6 at 8 n.6), the Fourteenth Amendment Due Process Clause governs his claim regarding the conditions of his confinement. *See Hubbard v. Taylor*, 399 F.3d 150, 164–67 (3d Cir. 2005). To establish a Fourteenth Amendment violation, a prisoner must allege that his conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ("In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee."); *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 325 (3d Cir. 2020) (noting that "detainees may not be punished before they are adjudicated guilty").

9

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious." *Id.* Only conditions of confinement that "cause inmates to endure such genuine privations and hardship over an extended period of time" violate the Fourteenth Amendment. *Hubbard v. Taylor*, 538 F.3d 229, 233 (3d Cir. 2008) (internal quotation marks omitted); *see also Hope*, 972 F.3d at 326 (noting that in assessing whether conditions amount to unconstitutional punishment of detainees, courts "consider the totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time").

The subjective component, on the other hand, asks whether the officials acted with a "sufficiently culpable state of mind." *Stevenson*, 495 F.3d at 68. To satisfy the subjective component, a prisoner generally must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Edwards v. Northampton County*, 663 F. App'x 132, 135 (3d Cir. 2016) (per curiam) ("[W]e agree with the District Court and find no reason to apply a different standard here as we have applied the 'deliberate indifference' standard both in cases involving prisoners and pretrial detainees." (internal citations omitted)). The Court may infer this state of mind "when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose." *Stevenson*, 495 F.3d at 68 (providing that in *Bell* the Supreme Court "allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective"); *Bell*, 441 U.S. at 584 n.15 ("[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a

court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."); *Camps v. Giorla*, 843 F. App'x 450, 452 (3d Cir. 2021) (per curiam) ("[A] court must determine whether the conditions complained of were imposed for the purpose of punishment or whether it is merely incidental to a legitimate governmental objective."). In determining whether a restriction or condition is related to a government interest, the Supreme Court has warned that these "considerations are peculiarly within the province and professional expertise of corrections officials, and, in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Bell*, 441 U.S. at 540 n.23. The Court must also keep in mind that "practical considerations of detention justify limitations on 'many privileges and rights'" and that a detainee "simply does not possess the full range of freedoms of an unincarcerated individual." *Hope*, 972 F.3d at 326 (quoting *Bell*, 441 U.S. at 545–46). In determining whether a pretrial detainee was subjected to unconstitutional punishment, we must consider the totality of the circumstances. *Bistrian v. Levi*, 696 F.3d 352, 372 (3d Cir. 2012).

      Here, as was implicit in our conclusion that Brown stated a claim under the Fourteenth Amendment at the screening stage, the Court finds that Brown has alleged sufficient facts to meet both the objective and subject components of this test. First, as to the objective component, while the Constitution does not mandate comfortable prisons, *Wilson v. Seiter*, 501 U.S. 294, 298 (1991), the conditions to which inmates are exposed must be humane, *Cook v. Corbett*, No. 14-5895, 2015 WL 4111692, at *7 (E.D. Pa. July 8, 2015). To that end, courts have held that the Constitution provides a "right, under both the Eighth and Fourteenth Amendments, to adequate ventilation," and that this right is implicated where the ventilation "undermine[s] the health of

inmates and the sanitation of the penitentiary." *Stokelin v. A.C.J.F. Warden*, No. CV 17-3484 (RBK), 2018 WL 4357482, at *3 (D.N.J. Sept. 13, 2018); *see also Davis v. Yates*, No. CV15-6943(KM)(JBC), 2016 WL 5508809, at *7 (D.N.J. Sept. 27, 2016) (providing the same); *cf. Keenan v. Hall*, 83 F.3d 1083, 1090 (9th Cir. 1996) ("Inadequate ventilation and air flow violates the Eighth Amendment if it undermines the health of inmates and the sanitation of the penitentiary." (quotation marks omitted)). Here, Brown has alleged sufficient facts to demonstrate that the ventilation system "undermine[d]" his health. In particular, Brown has alleged that the dust and dirt blown out of the vents and into his cell caused breathing difficulties and headaches. (Doc. No. 9 at 13, 16, 20.) Through these allegations, the Court finds that Brown has sufficiently asserted that the ventilation system has caused him "genuine privations and hardship over an extended period of time" and thus has met the objective component of unconstitutional punishment. *Hubbard*, 399 F.3d at 159.[4]

Second, the Court finds that Brown has adequately pled the subjective component of unconstitutional punishment. In particular, it does not appear that the dirty condition of the Berks County Jail's ventilation system is rationally related to any legitimate government interest, and thus the Court can infer that Defendants acted with the requisite mental state.[5] *See*

---

[4] Defendants also argue that Brown has not adequately pled an objective punishment because he has not alleged facts suggesting that Defendant Smith "intended to punish Plaintiff in violation of the Fourteenth Amendment." (Doc. No. 23-1 at 8.) The Court finds that this argument is better addressed through the subjective portion of unconstitutional punishment, which as noted above, asks whether the defendant acted with a "sufficiently culpable state of mind." *Stevenson*, 495 F.3d at 68.

[5] Defendants appear to argue that the Court should defer to their expert judgment on this issue. (Doc. No. 23-1 at 6.) But while the Supreme Court has explained that when evaluating the prison's interest in "maintaining security and order and operating the institution in a manageable fashion" courts should defer to the expertise of prison officials, *Bell*, 441 U.S. at 540 n.23, the Court finds that an issue as general as determining whether to clean the ventilation system is not an issue that is "peculiarly within the province and professional expertise of corrections officials." And more fundamentally Defendants have not provided any justification as why they chose not to clean the vents such that the Court could defer to their judgment.

*Stevenson*, 495 F.3d at 68; *Alexis v. U.S. Dep't of Homeland Sec.*, No. CIV. 05-1484 (WJM), 2005 WL 1502068, at *10 (D.N.J. June 24, 2005) ("[The] unsafe, unsanitary and inadequate conditions do not appear reasonably related to a legitimate, non-punitive governmental objective."). Additionally, Brown has pled that he raised his concerns about the ventilation system directly to Defendant Smith and that she "brushed [] off and ignored" these concerns. (Doc. No. 9 at 20.) At this early stage, and liberally construing Brown's Amended Complaint, the Court finds that these allegations plausibly allege that Defendant Smith acted with deliberate indifference. Thus, the Court finds that Brown has adequately pled facts to meet the subjective component of unconstitutional punishment.

Grasping for straws, Defendants argue that the Court should dismiss Brown's claim because Brown has not adequately alleged that the dirty ventilation system was the proximate cause of his injuries as opposed to the other uncleanly portions of the jail, such as the mold and dirty standing water. (Doc. No. 23-1 at 9.) But Brown specifically alleges that his headaches and breathing problems were the result of his exposure to the dirty ventilation system (Doc. No. 9 at 20), and the Court must credit that allegation at this stage. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) ("When considering a Rule 12(b)(6) motion, courts accept as true the allegations in the complaint and its attachments, as well as reasonable inferences construed in the light most favorable to the plaintiffs."). And regardless, the Court finds that the causal relationship between the dirty ventilation system and Brown's injuries is an issue that needs further factual development and should not be resolved through a motion to dismiss.

* * *

In sum, the Court finds that Brown has adequately stated a claim against Defendant

Smith related to the dirty ventilation system at Berks County Jail. Accordingly, Defendants' motion to dismiss is denied as to this claim.

## C. First Amendment Retaliation

Finally, the Court addresses Brown's claim for First Amendment retaliation premised on Defendant Collins issuing a misconduct report against him after he filed a grievance. To state a plausible First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in constitutionally protected conduct; (2) he suffered an adverse action sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) the constitutionally protected conduct was "a substantial or motivating factor" for the adverse action. *See Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir. 2001); *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003). As to the third prong, a plaintiff can "establish the requisite causal connection by showing either: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 759 (3d Cir. 2019) (internal quotation marks omitted).

As in our prior screening Memoranda, the Court finds that Brown has plausibly alleged each of these factors. (Doc. No. 11 at 9.) First, Brown alleges that he engaged in constitutionally protected conduct by filing a grievance. (Doc. No. 9 at 14, 18.) Second, Collins's misconduct report, which resulted in Brown being placed in the "hole," was sufficiently adverse to deter a person of ordinary firmness from exercising his constitutional rights. (*Id.*) And finally, there exists "unusually suggestive temporal proximity" between Brown's protected conduct and the misconduct report, given that he alleges he received this

14

misconduct report the "same afternoon" that he submitted a grievance.[6] (*Id.*) *See Hammond v. City of Wilkes Barre*, 628 F. App'x 806, 808 (3d Cir. 2015) (noting that "two weeks may be close enough temporally to be probative of causation"); *Johnson v. Sch. Dist. of Phila.*, No. CV 23-3430, 2024 WL 1773358, at *7 (E.D. Pa. Apr. 24, 2024) (finding that the retaliatory conduct occurring the same day as the protected activity was sufficient to show causation).

Defendants do not contest that the first two prongs are met. Instead, they argue that Brown has failed to meet the third prong because he has not alleged that Defendant Collins was aware of his grievance. (Doc. No. 23-1 at 10–11.) As an initial matter, Defendants are correct that to satisfy the causation component of a First Amendment retaliation claim, a plaintiff needs to prove that the individual who purportedly conducted the adverse action against them was aware of the protected conduct.[7] *See Falco v. Zimmer*, 767 F. App'x 288, 310 (3d Cir. 2019) ("For protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." (quotation marks and citations omitted)); *Smart v. Cmty. Educ. Ctr., Inc.*, No. CV162099KMJBC, 2017 WL 187148, at *5 (D.N.J. Jan. 17, 2017) ("[A] plaintiff must allege and prove that the defendant had knowledge of the constitutionally protected activity. Without such knowledge, any adverse action cannot be shown to be

---

[6] While Brown claims the misconduct report was issued the same day as his "last inquiry," (Doc. No. 9 at 14), reading this allegation in connection with other portions of the Amended Complaint, the Court understands Brown to be referring to his grievance (*id.* at 18).

[7] The Court notes, however, that Defendants reasoning as to why Brown must show that Defendant Collins had knowledge of the protected conduct is misguided. Defendants appear to argue that Brown's First Amendment retaliation claim must meet the standards for unconstitutional punishment under the Fourteenth Amendment, which requires some level of knowledge on the part of the defendant. (Doc. No. 23-1 at 10.) But Brown's claim for First Amendment retaliation is wholly distinct from his claims under the Fourteenth Amendment and is not subject to the standard for unconstitutional punishment. The requirement that the defendant have knowledge of the protected conduct arises instead from the requirement that the protected conduct be "a substantial or motivating factor" for the adverse action. *See Rauser*, 241 F.3d at 333. Without knowledge of the protected conduct, an individual cannot be said to have been motivated by that conduct in committing the adverse action.

retaliatory." (citation omitted)).  But at this stage, Brown need not conclusively allege that Defendant Collins had knowledge of his protected conduct, and instead need only plead "facts that allow the Court to *reasonably infer* that . . . defendant was aware of the protected conduct." *Cucchi v. Kagel*, No. CV 17-01597, 2018 WL 3752880, at *2 (E.D. Pa. Aug. 8, 2018) (emphasis added) (citing *Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002)); *see also Falco*, 767 F. App'x at 310 ("[A]t this motion to dismiss stage, Falco must only produce some evidence, direct or circumstantial, of [the causation] element that is enough to raise a right to relief above the speculative level." (quotation marks omitted)).  And here, liberally construing the Amended Complaint, Brown has met that burden.  In particular, Brown alleges that the same day that he filed a grievance regarding the Treatment Department's refusal to place him on the list of approved worked at the jail, Collins, who is the Director of the Treatment Department, filed a "Class I Misconduct" report against him, claiming that he was "interfering with staff." (Doc. No. 9 at 14, 18.)  Although a close call, the combination of Collins being the director of the department against which Brown filed a grievance and that the misconduct report, as Brown describes it, seems to be related to Brown's filing of grievances regarding the list of approved workers, allows the Court to reasonably infer that Collins knew of the grievance when issuing her retaliatory misconduct report.  *See Bell v. Sullivan*, No. CV 17-912, 2017 WL 5518005, at *4 (E.D. Pa. Nov. 16, 2017) (denying motion to dismiss where the defendant argued that the plaintiff failed to plead knowledge on the part of the defendant because the Court "need only reasonably infer" causation and the surrounding circumstances met this burden).

Thus, the Court concludes that Brown has adequately stated a claim for First Amendment retaliation and denies Defendants' motion to dismiss as to that claim.

## IV.  CONCLUSION

For the forgoing reasons, the Court denies Defendants' motion to dismiss in its entirety.

An appropriate Order follows.